325 So.2d 1 (1975)
Fred O. DICKINSON, Jr., Etc., et al., Appellants,
v.
CITY OF TALLAHASSEE, Etc., Appellee.
No. 46580.
Supreme Court of Florida.
December 10, 1975.
*2 Larry Levy, Tallahassee, for appellants.
Bryan W. Henry and Mark H. Rodman, of Henry, Buchanan & Rodman, P.A., Tallahassee, for appellee.
ENGLAND, Justice.
This case is here on appeal from a decision of the Leon County Circuit Court which directly passed on the validity of a Florida statute. We have jurisdiction under Article V, § 3(b)(1) of the Florida Constitution.
At issue here is the validity of a utility tax imposed by the City of Tallahassee on the State of Florida and its agencies and departments, on Leon County, and on the Leon County School Board (collectively for convenience called "the State"). Acting under the authority seemingly conferred in Article VII, Section 9(a), Fla. Const. (1968) and Section 166.231(1), Fla. Stat. (1973),[1] the City adopted an ordinance imposing a 10% tax on all purchases of electricity, water and gas made within city limits.[2] The ordinance specifically exempted from the tax utility purchases of the federal government and churches, but it contained no exemption for the State.[3]
Article VII, Section 9(a) of the 1968 Constitution provides in relevant part that municipalities "may be authorized by law to levy other [than ad valorem] taxes ... except ... taxes prohibited by this constitution." Sections 166.231(1) and (4), Fla. Stat. (1973), provide:
"(1)(a) A municipality may levy a tax on the purchase of electricity, metered or bottled gas (natural liquefied petroleum gas or manufactured), water service, telephone service, telegraph service, and cable television service. The tax shall be only upon purchases within the municipality and shall not exceed ten (10) percent of the payments received by the seller of the taxable item from the purchaser for the purchase of such service.
* * * * * *
(4) A municipality may exempt from taxation hereunder the purchase of the taxable items by the United States government, the State of Florida, or any other public body as defined in section 1.01, Florida Statutes, and shall exempt [purchases by] any recognized church in this state for use exclusively for church purposes."
Appellants brought a declaratory action challenging the constitutionality of Section 166.231. The circuit court granted final judgment for the City, specifically holding that the statute and the City's implementing ordinance were constitutional.
The State basically argues that it is "immune" from taxation, and that any waiver of that immunity must be expressly stated in either the Constitution or a statute. The State observes that neither the constitutional nor the statutory foundation for *3 this municipal tax[4] expressly waives that inherent sovereign immunity. The City basically argues the converse of the State's position. The City suggests that "inherent immunity" is irrelevant because the 1968 Constitution conferred municipal taxing authority without reserving sovereign immunity. Starting from the premise that the Constitution is a document of limitation, it argues that there is no limitation in that document which would bar municipal taxation of State property. The City concedes that the State, like any other tax object, may be "exempt" from tax under proper circumstances, but it observes that no such express exemption appears in the Constitution, in the statute, or in this implementing ordinance.
In resolving these diametrically opposed theories of intergovernmental finance, we have concluded that the State must prevail. Precedent and logic both dictate that the sovereign's general freedom from taxation derives from an "immunity", not from an "exemption".
The State's immunity from taxation is so well established in Florida's jurisprudence that little elaboration is needed here. In Park-N-Shop, Inc. v. Sparkman, 99 So.2d 571, 573-74 (Fla. 1958), we said that
"property of the state and of a county ... is immune from taxation, and we say this despite the references to such property in [statutes] as being exempt."
In Alford v. State, 107 So.2d 27, 29 (Fla. 1958), we explained and reiterated that view.
"Although our statutes specifically exempt such State owned lands, such exemption is not dependent upon statutory or constitutional provisions but rests upon broad grounds of fundamentals in government... . [W]ithin constitutional limits, the Legislature may provide for the taxation of lands or other property of the State... . The question arises, however, whether the subject act actually does so provide."[5]
In Orlando Utilities Comm'n v. Milligan, 229 So.2d 262, 264 (4th DCA Fla. 1969), certiorari denied, 237 So.2d 539 (Fla. 1970), a municipality's taxing power was distinguished from the state's and the immunity doctrine was restated with some clarity:
"[A city's freedom from taxation] is an `exemption' only, not an `immunity' from taxation. Exemption presupposes the existence of a power to tax whereas immunity connotes the absence of that power. The state and its political subdivisions, like a county, are immune from taxation since there is no power to tax them."[6]
The doctrine of sovereign tax immunity is also well-established in the jurisprudence of other jurisdictions having a similar constitutional scheme of government.[7]
The crux of this case, as it was in Alford, is whether the State has waived its immunity from city taxation in either the 1968 Constitution or the applicable tax statutes. We think not. As regards the Constitution, we cannot accept the City's contention that Article VII, Section 9(a) was meant to authorize taxation of the sovereign without any express reference to that fact. The express purpose of that provision was to grant municipalities the constitutional authority necessary to raise *4 revenues through taxation. We have not been directed to any discussion in either the development of the 1968 Constitution or the debates surrounding its adoption which indicate that this grant of tax power was, by implication, also intended to be a release of the sovereign's immunity from tax. We are unwilling to supply to that implication now.
Turning to the alleged statutory basis for state taxation by municipalities, we note that the "grant" clause in Section 166.231 does not expressly direct such taxation. The City suggests, however, that the authorization can be read from the "exemption" clause of Section 166.231. We reject the suggestion that an express grant of tax authority can be expanded through the terminology of an exception.[8]
The question of "immunity" is more than merely a facial exercise in constitutional and statutory construction. There are compelling policy reasons for the doctrine in terms of fiscal management and constitutional harmonization. If we were to adopt the City's suggestion that the State is only exempt from taxation, the present Florida Constitution would enable the cities to tax the State and its counties without their being able to tax the cities.[9] The City sees no harm in this, saying that the Legislature can at any time, by statute, change that result. That solution, however, does not answer the more significant question of initial legislative awareness. It does not explain why the Legislature would authorize state taxation by the municipalities without some advance indication as to which municipalities would choose to tax the State and to what extent.[10] The State would have no way to anticipate revenue needs or appropriate funds sufficient to meet those variant tax burdens. Thus, it is inconsistent with sound governmental principles to suggest that a state which cannot finance itself on a deficit basis[11] would indirectly authorize an indeterminate amount of revenue to be taken from all of its citizens for the benefit of some of its municipal governments. A more logical approach to intergovernmental finance would require, as the State contends, a clear and direct expression of the State's intention to subject itself to selective, local tax burdens.
We conclude that the State of Florida, and the other appellants here, are immune from the 10% utility tax levied by the City of Tallahassee, since neither the authorizing constitutional provision nor the implementing statute constitute a waiver of that immunity. The decision of the circuit court is reversed.
ADKINS, C.J., BOYD, OVERTON and SUNDBERG, JJ., and MOORE, Circuit Judge, concur.
NOTES
[1] Section 166.231 appears in the "Municipal Finance and Taxation" Part of the Municipal Home Rule Powers Act (chapter 166, Fla. Stat. (1973)), adopted by the 1973 Legislature. Chapter 73-129, Laws of Florida.
[2] Section 1, Ordinance No. 74-0-1428 (7/9/74), amending section 31-4 of City Code. The "levy" provision of the ordinance purports to tax only electricity, gas and water, although the exemption and effective date provisions also include telephone and telegraph services. Apparently cable television service was also included in the controversy, as part of a temporary restraining order entered to prevent the City from disconnecting State services pending final adjudication on the merits. Obviously the City cannot tax more than the City Commission expressly directed, and any attempt to tax telephone, telegraph or cable television service under this ordinance would be invalid.
[3] Section 2, id., amending section 31-7 of the City Code.
[4] The City concedes that, unlike the State itself, municipalities lack the power to impose any tax without express authorization in the Constitution and, under their present constitutional authorization, in a statute.
[5] Footnotes in the original are omitted.
[6] Each of these Florida cases arose under a predecessor Florida Constitution. Nonetheless, they are controlling here since the principle of immunity is not constitutionally dependent.
[7] E.g., Kern-Limerick Inc. v. Sourlock, 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546 (1954); Newton v. Atlanta, 189 Ga. 441, 6 S.E.2d 61 (1939); Tempe v. Arizona Board of Regents, 11 Ariz. App. 24, 461 P.2d 503 (1970); Hellerstein, State and Local Taxation 649-94 (3d Ed. 1969).
[8] If the City were correct in its contention, we would have serious reservations as to whether this portion of Chapter 73-129, Laws of Florida, was validly enacted. Cities did not tax the State under prior law (Opin.Fla. Atty.Gen. 061-54 (4/4/61)), and there is a presumption against a new tax being enacted without express reference in the title. State ex rel. Szabo Food Svc., Inc. v. Dickinson, 286 So.2d 529 (Fla. 1974). The title of this act gave no indication that the State was relinquishing its immunity from tax for the first time. Consequently, Article III, Section 6 of the Florida Constitution would suggest that this failure to describe the reach of the Act in its title is a fatal flaw. Cf., State ex rel. Davis v. Love, 99 Fla. 333, 126 So. 374 (1930). We do not reach this question, however, in light of our conclusion that the inherency doctrine provides the State and its political subdivisions with immunity from tax.
[9] Article VII, Section 3(a) of the Florida Constitution exempts city property from taxation. Nothing in the Constitution creates an express exemption for the State.
[10] Under self-imposed legislative rules then in effect, the Act proposing such a tax would have been required to carry a note explaining this fiscal impact. None accompanied C.S. for H.B. 1020, the bill which became Chapter 73-129, Laws of Florida.
[11] Art. VII, § 1(d), Fla. Const. (1968).